TOM C. and TOMMIE O. WHITE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
White v. Commissioner
Docket No. 2991-74.
United States Tax Court
T.C. Memo 1976-382; 1976 Tax Ct. Memo LEXIS 23; 35 T.C.M. (CCH) 1726; T.C.M. (RIA) 760382; December 13, 1976, Filed Harold D. Rogers, for the petitioners. Suzanne B. O'Neill and Kenneth A. Little, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1970 in the amount of $6,598.93.
The only issue for decision is the amount petitioners are entitled to deduct as a charitable contribution to the First Baptist Church of Wichita Falls, Texas because of a gift to that church on December 18, 1970, of 4,000 shares of stock of Mercantile Credit Corporation. The amount of the deduction to which petitioners are entitled is dependent upon the fair market value of the stock given by petitioners to the church on December 18, 1970. FINDINGS OF FACT Some of the facts have been stipulated and are found *24 accordingly. Petitioners, husband and wife, who resided in Wichita Falls, Texas at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1970. Mercantile Credit Corporation (hereinafter referred to as Mercantile) was formed in 1938. At the time of its formation the primary function intended to be performed by Mercantile was providing financing for White Auto Stores.The stock of Mercantile from the time of its formation was held primarily by members of a family by the name of Adams and members of a family by the name of White of which Tom C. White (hereinafter petitioner) was a member. However, from at least prior to 1966 there were shareholders who were neither members of the White nor the Adams family. Mercantile kept its books and reported its income and prepared its annual report on the basis of a fiscal year ending March 31. From 1962 until the end of its fiscal year 1966 the owners of the shares of Mercantile stock were primarily identified in some way with White Auto Stores. White Auto Stores were primarily dealer-operated stores, each dealer operating under franchise. On November 15, 1966, control of *25 White Auto Stores was acquired by a subsidiary of Household Finance Corporation (hereinafter Household Finance). From 1962 throughout the fiscal year 1966 Mercantile's board of directors and officers had remained unchanged. W. Erle White, a brother of petitioner, was chairman of the board; B. J. Hale, president; Tom C. White, vice president; George G. Adams, vice president; R. B. Francis, vice president; Gary White, treasurer; and George J. Adams, secretary. On November 1, 1966, the Adams family, consisting of George G. Adams, George R. Adams, and Richard A. Adams, owned 52,773, 44,526, and 44,526, respectively, of the outstanding shares of stock of Mercantile.At all times here relevant there was a total of 500,000 shares of Mercantile stock outstanding. In November 1966, W. Erle White and his family transferred 115,492.5 shares of Mercantile common stock to various members of the Adams family. The sales price of this stock was $3.83 per share. This price represented book value of the stock as of March 31, 1966, less 10 percent. After this sale by W. Erle White and his family of Mercantile stock to the Adams family, 51.7 percent of the outstanding stock of Mercantile was owned *26 by the Adams family. At the time W. Erle White and his family sold their shares of Mercantile stock to the Adams family, W. Erle White and his family acquired a controlling interest in Beacon National Insurance Co. and Equitable Life Insurance Co. by acquisition of stock of these corporations owned by the Adams family. After the purchase by the Adams family of a controlling interest in Mercantile, George G. Adams became chairman of the board; George R. Adams, president; George J. Adams, secretary; Leonard Chittum, Jr., assistant secretary and treasurer; and John H. Foster, assistant treasurer. At the time of the acquisition by the Adams family of the Mercantile stock of W. Erle White and his family, George G. Adams offered to purchase the 58,501 shares of stock of Mercantile which petitioner then owned for a price computed at book value less 10 percent. However, petitioner did not accept the offer. By November 1966 when Household Finance acquired control of White Auto Stores, the business of Mercantile had expanded to include financing for businesses other than White Auto Stores, and in addition Mercantile had acquired as subsidiaries two small loan companies located in *27 Texas. Also, at that time Mercantile owned a retail White Auto Store in Delhi, Louisiana and one in Quitman, Georgia. In the annual report of Mercantile for its fiscal year ending March 31, 1966, the statement was made that the company would continue in its efforts to diversify. Although the dealer of each of the dealeroperated White Auto Stores was entitled to choose the finance company with which his business was placed, when the subsidiary of Household Finance acquired control of White Auto Stores a number of the dealers chose to have their financing handled by Household Finance rather than Mercantile. Some of the dealers did stay with Mercantile, but the loss of many of the White Auto Stores dealerships as customers resulted in a substantial loss of business for Mercantile. The following schedule shows the paper purchased, net income, net income per share of common stock, cash dividend per share of common stock, net worth, and book value per share of Mercantile common stock for its fiscal years ending March 31, 1962 through 1971: Net
Cash
Income
Dividend
Book Value
Per Share
Per Share
Per Share
Paper
Net
of Common
of Common
of Common
Year
Purchased
Income
Stock
Stock
Net Worth
Stock
1962
$ 9,151,827
$ 69,147
.14
.05
$1,586,190
$ 3.17
1963
11,653,844
154,555
.31
.05
1,738,434
3.48
1964
13,621,940
178,392
.35
.05
1,891,826
3.78
1965
14,584,300
176,9 61
.35
.10
2,018,787
4.02
1966
15,490,593
187,917
.37
.15
2,131,704
4.26
1967
15,212,829
199,958
.40
-0-
2,331,662
4.66
1968
11,969,507
149,730
.30
-0-
2,481,392
4.96
1969
11,956,130
94,263
.19
-0-
2,575,655
5.15
1970
9,471,652
98,076
.20
-0-
2,673,731
5.35
1971
7,045,399
125,235
.25
-0-
2,798,966
5.60
*28 The annual report of Mercantile for its fiscal year 1969 explained that two extraordinary items of expense were incurred during the year, an embezzlement loss in excess of a bond recovery in one of the small loan offices of $21,053, and a loss of $11,067 on the sale of the retail store in Quitman, Georgia. The annual report of Mercantile for its fiscal year ending March 31, 1970, stated that effective October 31, 1969, five subsidiaries of Mercantile liquidated into the parent corporation. Included in the liquidation was a retail White Auto Store and the two small loan companies. The report stated that the two small loan companies continued in operation with only a change in corporate name. This report also stated that one subsidiary, Computer Services Company of Wichita Falls, Texas, which engaged primarily in data processing services to independent dealers, was retained as a subsidiary. The report stated that this company had been acquired on February 28, 1970.This report also showed a loss of $11,125 on the sale of retail stores. The principal assets of Mercantile as of December 1970 consisted of notes, contracts and accounts receivable, most of these being represented *29 by 24-month consumer installment accounts secured by chattel mortgages and guaranteed by the dealers, as well as by a dealer reserve and allowance for bad debts. The following schedule shows, as of 1970, information as to asset size, net worth, gross revenues, net income, yield on assets, book value of shares, earnings of shares, dividend of shares, price of shares, price-earnings rations, dividend yields, and price-book value ratios of the named companies whose stock was sold on the New York Stock Exchange: 1970 Data: Invested
Capital
Gross
Asset Size
or Net Worth
Revenues
Net Income
Assets
Share
Share
Share
Company
(millions)
(millions)
(millions)
(millions)
CIT Financial Corp.
$3,610.00
$ 605.00
$ 447.50
$ 66.00
GAC Corp.
1,618.00
296.60
394.00
17.2
Beller (W.E.) Int'l Corp.
999.00
-----
125.24
16.72
Talcott National
745.80
87.02
90.73
5.40
American Financial System
471.30
70.40
91.40
8.09
American Investment
679.74
81.20
114.07
6.49
Benificial Corporation
1,959.40
547.70
291.9
61.5
Dial Financial
250.72
41.66
49.75
4.90
Family Financial
362.80
70.08
78.15
5.73
Liberty Loans
490.70
75.80
91.10
4.00
Average
*30 1970 Data: Yield on
Book Value/
Zarning/
Dividend/
Share
Ratio
Yield
Value Ratio
Company
(millions)
(millions)
(millions)
(millions)
CIT Financial Corp.
1,83%
$ 27.98
$ 3.27
$ 1.80
GAC Corp.
1.06%
21.50
1.62
1.50
Beller (W.E.) Int'l Corp.
1.69%
10.91
1.60
.60
Talcott National
.72%
18.63
1.32
1.10
American Financial System
1.72%
11.73
1.67
1.10
American Investment
.95%
12.14
1.06
.65
Benificial Corporation
3.14%
25.37
4.26
1.60
Dial Financial
1.95%
9.03
1.07
.425
Family Financial
1.58%
13.21
1.17
1.15
Liberty Loans
.82%
19.45
1.03
1.00
Average
1.55%
1970 Data: 12/18/70
Price/
Price-Earning
Dividend
Price-Book
Company
(millions)
(millions)
(millions)
(millions)
CIT Financial Corp.
$ 44.25
13.53
4.11%
1.58
GAC Corp.
22.00
13.58
6.82%
1.02
Beller (W.E.) Int'l Corp.
23.625
14.77
2.54%
2.17
Talcott National
18.50
14.02
5.95%
1.00
American Financial System
17.00
10.18
6.47%
1.45
American Investment
11.625
10.97
5.59%
.96
Benificial Corporation
51.375
12.06
3.11%
2.03
Dial Financial
12.50
11.68
3.40%
1.38
Family Financial
13.25
11.32
8.68%
1.00
Liberty Loans
17.875
17.35
5.59%
.92
Average
*31 The following schedule shows, as of 1970, the same information with respect to the companies indicated, the stock which sold on the over-the-counter market, as is shown in the preceding schedule with respect to the companies there listed: 1970 Data: Invested
Capital
Gross
Asset Size
or Net Worth
Revenues
Net Income
Assets
Shares
Share
Share
Company
(millions)
(millions)
(millions)
(millions)
Kentucky Finance Co.
$ 54.134
$ 6.251
$ 12.841
$ .538
Security Finance Co. of
Spartensberg
8.788
1.923
4.645
.425
Equitable Credit &
6.473
1.256
1.303
.201
Discount
Owens Discount Co.
9.390
2.506
1.025
.392
Allied Finance Co.
51.444
5.520
5.643
.700
Southern Discount Co.
32.591
6.883
9.317
.704
Average
1970 Data: Yield
on
Book Value/
Earning/
Dividend/
Share
Ratio
Yield
Value Ratio
Company
(millions)
(millions)
(millions)
(millions)
Kentucky Finance Co.
.99%
$ 6.25
$ .27
$ .00
Security Finance Co. of
Spartensberg
4.84%
3.29
.70
.12
Equitable Credit &
3.11%
1.18
.11
.00
Discount
Owens Discount Co.
4.17%
24.63
3.86
.60
Allied Finance Co.
1.36%
30.67
2.98
1.00
Southern Discount Co.
2.16%
8.71
.83
.00
Average
2.77%
*32 1970 Data: 12/18/70
Price/
Price-Earnings
Dividend
Price-Book
Company
(millions)
(millions)
(millions)
(millions)
Kentucky Finance Co.
$ 3.25
12.04
.00%
.52
Security Finance Co. of
Spartensberg
4.00
5.71
3.00%
1.22
Equitable Credit &
1.00
9.09
.00%
.95
Discount
Owens Discount Co.
16.00
4.15
3.75%
.65
Allied Finance Co.
20.00
6.83
5.00%
.65
Southern Discount Co.
8.875
10.69
.00%
1.02
Average
8.09
1.96%
.84
The following schedule shows the names of certain other companies engaged in finance or loan operations together with the stock exchange on which the stock of the company sold and the price-earnings ratio and equity per share as of 1970, with the last bid price for the stock of the company in 1970 and the ratio of the bid price to the equity per share: Equity/
Ratio
Company
Exchange
P/E
PS
Last Bid
Bid/Equity
Citizens Financial Corp.
ASE
11
9.93
12.25
123.4%
Commercial Alliance Corp.
ASE
11
3.28
6.625
201.9%
CNA Financial Corp.
NYS
16
23.22
19.00
81.8%
Credithrift Financial
NYS
16
15.47
27.00
174.5%
Household Finance Corp.
NYS
15
12.75
42.875
336.3%
ISC Industries
ASE
23
4.25
5.875
138.2%
Mercantile Industries
OTC
8
9.11
6.375
70.0%
Morlan Pacific Corp.
OTC
13
10.87
11.75
108.1%
Ritter Financial
ASE
16
3.68
5.50
149.5%
Southwestern Investment
Co.
ASE
9
14.35
12.00
83.6%
*33 All of the finance companies listed above whose stock sold on the over-the-counter market, except Owens Discount Company, had preferred stock as well as common stock outstanding in 1970 and Security Finance Company of Seartensberg also had warrants outstanding. Owens Discount Company had certain subordinated notes outstanding and Equitable Credit and Discount Company had debentures outstanding. Of the companies listed whose stock sold on the New York Stock Exchange, CIT Financial Corporation, GAC Corporation, Heller (W.E.) International Corporation, American Financial System, Beneficial Corporation, and Liberty Loans Corporation had preferred as well as common stock outstanding in 1970. On May 1, 1970, Charles C. White, petitioner's brother, and his wife, Gerda, sold 8,798 shares of Mercantile stock to George R. Adams for $2.50 per share. At the time Mr. and Mrs. White made this sale they had outstanding income tax liabilities and other indebtednesses in the total amount of approximately $100,000. They found it necessary to obtain cash funds for payment of their income tax liabilities. At the time Mr. and Mrs. White sold the 8,798 shares of Mercantile stock, they owed a substantial *34 number of shares of Household Finance stock on which, in 1970, they received dividends of $29,916.40. Most of the Household Finance stock owned by Mr. and Mrs. White was pledged to secure a part of their indebtedness. During 1970, Mr. and Mrs. White sold 1,000 of their unpledged shares of Household Finance stock for a sales price of $36,693.84. Mr. and Mrs. White needed the income from their dividends on the Household Finance stock for living expenses. Also, their basis in much of their Household Finance stock was low and they would have realized a substantial capital gain had they sold that stock in 1970 at the then prevailing price of $39 to $40 per share. In 1966, Mr. Wade Brake, who was a district manager with White Auto Stores, sold 500 shares of Mercantile stock to T. C. White and Co., Inc. at $4 per share. On January 17, 1969, Myrna Braddock sold 825 shares of Mercantile stock at $2.50 per share to George R. Adams. On January 24, 1969, Earl Zarger sold 1,100 shares of Mercantile stock to George R. Adams at $2.50 per share. On February 5, 1969, Lucia Chapman sold 550 shares of Mercantile stock at $2.50 per share to George R. Adams. On July 4, 1969, the estate of Jerry *35 McLemore sold 200 shares of Mercantile stock to George R. Adams at $2.50 per share. Lillie M. White, the mother of petitioner and W. Erle White, died on September 2, 1970. Petitioner and his brother, W. Erle White, were independent co-executors of their mother's estate. Included in the assets of the estate of Lillie M. White were 2,640 shares of Mercantile stock. The County Court of Wichita County, Texas, appointed appraisers to appraise the assets of the estate of Lillie M. White. On November 1, 1971, an inventory and appraisement of property, real and personal, belonging to the estate of Lillie M. White was filed in the County Court of Wichita County, Texas, which, insofar as here pertinent, states as follows: W. Erle White and Tom C. White, Executors of the Estate of Lillie M. White, deceased, having collected the Estate within the time required by law, with the assistance of a majority of the appraisers appointed by the Court, makes and represents and shows to the Court that this is a full, complete, true and correct inventory and appraisement of all of the property, both real and personal of such Estate, which has come to their knowledge, and that the appraiser value of *36 each article of such property is stated opposite such article in the inventory. * * *
PERSONAL PROPERTY
* * *
2,640 shares Mercantile Credit Corporation; common. $6,600.00 * * *
STATE OF TEXAS COUNTY OF WICHITA WE, W. Erle White and Tom C. White, Executors of the above styled Estate, do solemnly swear that the foregoing is a true and complete inventory of all property, real and personal, belonging to said Estate, which has come to our knowledge which was owned by Lillie M. White on September 2, 1970. /s/ W. Erle White / W. ERLE WHITE /s/ Tom C. White / TOM C. WHITE * * *
STATE OF TEXAS COUNTY OF WICHITA BEFORE ME, the undersigned authority, on this day personally appeared Jerry Mathis, Stan West, and James Davis, appraisers of the above named Estate, heretofore appointed by the County Court of Wichita County, Texas, and each being duly sworn says that the above is a true and correct inventory and appraisement of property pointed out to them by W. Erle White and Tom C. White, Executors, belonging to said Estate. /s/ Jerry Mathis / JERRY MATHIS /s/ Stan West / STAN WEST /s/ James Davis / JAMES DAVIS On November 15, 1971, petitioner, *37 as a coexecutor of the estate of Lillie M. White, executed an estate tax return along with the other co-executor, in which he declared under penalty of perjury that the return had been examined by him and to the best of his knowledge and belief was a true, correct and complete return. On this return on "Schedule E--Stocks and Bonds," was listed as Item 3: 2,640 shares, Mercantile Credit, Corporation, common; closely-held, corporation; 70% controlled by, George G. Adams family. Last sale, was May, 1970 at $2.50., Value - 2,640 X $2.50 6,600.00 The assets of the estate of Lillie M. White were valued as of the date of death, September 2, 1970. On the estate tax return the total gross estate was shown as $1,048,682.77, and the taxable estate as $825,536.50. Petitioner was a one-fourth heir to the estate of his mother, Lillie M. White. The assets in the estate of Lillie M. White were appraised by Jerry Mathis, a certified public accountant, and two other court-appointed appraisers. Mr. Mathis has served as an accountant for W. Erle White and for some of petitioner's businesses, including T. C. White and Co., Inc. He has also served as an accountant for George G. Adams and George *38 R. Adams. He was the accountant who prepared the Federal estate tax return for the estate of Lillie M. White. When he made the appraisal of the shares of Mercantile stock in the estate of Lillie M. White he did it on the basis of his knowledge of a sale in May 1970 of shares at $2.50 a share. At the time the appraisers met with the executors to discuss the appraisal of the estate of Lillie M. White, particularly with reference to preparing the Federal estate tax return, petitioner stated that on a personal Federal income tax return of his that was then being examined he had used a value for Mercantile stock different from that used in the estate tax return. For this reason he questioned the appraisal with respect to the value of the Mercantile stock in the estate of Lillie M. White. After this discussion with respect to the value to be used for the Mercantile stock in the estate tax return of the estate of Lillie M. White, petitioner pointed out to Mr. Mathis that he had given 2,000 shares of Mercantile stock to a charitable foundation in 1969 and listed it on his Federal income tax return for that year at book value. Mr. Mathis insisted that the value of $2.50 a share be used *39 on the estate tax return, explaining that on another estate tax return of which he was the preparer he had used a similar value and that the estate tax return was then under investigation. As of December 18, 1970, George G. Adams, George R. Adams, and the Estate of Richard R. Adams owned, respectively, 89,404, 141,018 and 132,239 shares of Mercantile stock. On December 18, 1970, petitioner gave 4,000 shares of his then 51,001 shares of Mercantile stock to the First Baptist Church of Wichita Falls, Texas. On the same date petitioner wrote a letter to the pastor of the First Baptist Church of Wichita Falls stating as follows: In accordance with our discussion last Wednesday December 16th you will find enclosed Stock Certificate No. 1355 which is for 4000 shares of common stock of the Mercantile Credit Corporation. Also enclosed is an annual report on Mercantile Credit for their fiscal year ending March 31, 1970. You will note by the financial statement that Mercantile Credit has assets and liabilities of $8,329,695 as of the end of their last fiscal year. The net worth of the Corporation on that same date was $2,673,731. Since the Corporation has 500,000 shares of common *40 stock outstanding this makes the book value of the stock be $5.35, making the total value of the 4000 shares to be $21,400. The stock certificate is made out in the name of The First Baptist Church in Wichita Falls and is dated December 17, 1970. It is from original Stock Certificate No. 76. Because of the fact that my wife owns a large block of this common stock and each of my children own a large block, and of course I personally own a much larger block, better than 20% of the company's outstanding stock, it would be appreciated if you and your Trustees would not throw all of this 4000 shares on the market for sale at one time and it would be further appreciated if you would not offer any of it for sale for at least a period of three (3) years of date. I ask for this favor because I do not want to do anything which would be detrimental to the Mercantile Credit Corporation. It is my personal opinion that you should be able to get, after a period of three (3) years, anywhere from $9.00 to $15.00 a share for this stock. Please understand that the things I am asking for would be merely a favor to me and to Mercantile Credit. At the same time please understand that there are *41 no strings attached to this gift whatsoever. You may sell this stock anytime you so desire at any price you so desire. The 4000 shares of stock is a plain outright gift to the First Baptist Church in Wichita Falls. Petitioner was a good friend of the pastor of the First Baptist Church of Wichita Falls, Texas. Also, petitioner and George G. Adams had been long-time friends and business associates. Petitioner was a successful businessman in a number of businesses. From 1958 to 1966 he was chairman of the board of White Auto Stores, Inc. He was a co-founder of that corporation, as well as Mercantile, Beacon National Insurance Company and Eureka Life Insurance Company. On their Federal income tax return for the calendar year 1970 petitioners listed the 4,000 shares of stock donated to the First Baptist Church of Wichita Falls, Texas at $5.35 a share, making a total value of $21,400 which they claimed as part of their charitable deductions in computing their taxable income. Respondent in his notice of deficiency disallowed $11,400 of the charitable deduction of $21,400 claimed for the gift of the Mercantile stock with the explanation that this stock had a fair market value *42 in December 1970 of $2.50 per share rather than $5.35 per share as claimed in petitioners' return. OPINION Section 170, I.R.C. 1954, [1] provides that there shall be allowed as a deduction any charitable contribution, payment of which is made within the taxable year. Section 1.170-1(c), Income Tax Regs., provides that if a contribution is made in property other than money the value of the contribution is the fair market value of the property at the time of the contribution. This regulation defines fair market value as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of the relevant facts. *43 The definition of fair market value of property for the purpose of determining the amount of a charitable deduction to which a taxpayer who contributes property to a charitable organization is entitled is the same definition of fair market value used for determining the value of property for otherpurposes of the income tax law and for purposes of the gift and estate tax law. The cases dealing with valuation of property are numerous. When the property which is being valued is stock, valuation is generally relatively easy if that stock is sold on one of the recognized exchanges. However, see Moore-McCormack Lines,Inc., 44 T.C. 745, 759 (1965), for discussion of circumstances under which New York Stock Exchange quotations have been considered not to measure value in the extraordinary circumstance of issuance of large blocks of stock for property. Where, as here, the stock does not sell on one of the recognized exchanges, the problem of valuation is more difficult. As pointed out by Judge (now Justice) Blackmun in Hamm v. Commissioner,325 F.2d 934, 938 (8th Cir. 1963), affirming a Memorandum Opinion of this Court: Valuation of stock *44 for tax purposes is a matter of "pure fact". * * * * * *
* * * "there is no single formula universally applicable in determining such value and in the absence of evidence of an open market for stock it is proper to consider all the circumstances connected with the corporation in determining its fair market value". O'Malley v. Ames, supra, p.258 of 197 F.2d. In Arc Realty Co. v. Commissioner,295 F.2d 98, 103 (8th Cir. 1961), affirming in part and reversing in part 34 T.C. 484 (1960), some of the factors to be considered in valuing closely held stock are listed. Among the factors listed were "corporate assets, earnings, dividend policy, earning power of the corporation, prospects of the corporation, book value, character of the management, competition and other factors which an informed purchaser and informed seller would take into account." As pointed out in Hamm v. Commissioner,supra, and numerous other cases, the opinion of expert witnesses are to be considered but the court must weigh opinions along with all other evidence in making its final determination. Sales of stock near the valuation date are of course to *45 be given weight, but only to the extent that such sales are at arm's length and are not made under compulsion of any kind. Petitioners' expert witness in this case, in computing a value for the Mercantile stock as of December 18, 1970, at $5.35 a share, relied primarily on the book value of that stock as of March 31, 1970, the end of the last fiscal year of the corporation preceding the date of the gift. Petitioners' witness testified that his conclusion that the book value of the stock represented its fair market value was supported (1) by the computation of the liquidation value of the stock over a 2-year period, (2) by use of the present value of future net income approach which he based on the average net income of Mercantile during the period 1962 through 1970, and (3) by his computation of a price-earnings ratio of certain companies, the stock of which was sold on the New York or American Stock Exchange, applied to the earnings of Mercantile. Petitioners' expert witness gave no consideration to any prior sales of the Mercantile stock.
Respondent's expert witness in making his valuation relied primarily on a comparison of the sales price of stock to earnings and net worth *46 of companies whose stock was sold over the counter to Mercantile's earnings and net worth. This witness referred to these companies as "comparable" companies to Mercantile. Petitioners argue that the stock of Mercantile should be valued at net asset value since stock of investment or holding companies has been held to be properly valued primarily on the basis of net asset value. See Estate of Henry E. Huntington,36 B.T.A. 698, 715 (1937). Respondent argues that Mercantile is not an investment or holding company but rather a finance and loan company and that book value should be given no greater weight in the valuation of the stock of Mercantile than it is generally given in valuing the stock of any operating company. In our view the evidence here is clear that Mercantile was an operating company and that its stock must be valued by considering all factors generally considered in valuing the stock of a closely held corporation. Respondent argues at great length that petitioners should be bound by the $2.50 valuation of Mercantile stock used in the estate tax return of the estate of Lillie M. White. We have considered not only the $2.50 value used for the *47 Mercantile stock held by the estate of Lillie M. White, but also the sale of Mercantile stock in May 1970 on which that value was based. Under the circumstances here present, we do not consider petitioner to be estopped by the value used for the Mercantile stock in the estate tax return of the estate of Lillie M. White from claiming a higher value for the 4,000 shares of Mercantile stock he gave to a charity in December 1970. Respondent has not pleaded estoppel in any form and does not argue that petitioner is estopped.Respondent apparently recognizes that the evidence with respect to the value used for Mercantile stock in the estate tax return of the estate of Lillie M. White, executed by petitioner, is to be weighed with all other evidence of record in arriving at the value as of December 18, 1970, of the 4,000 shares of Mercantile stock given by petitioner to the First Baptist Church. Petitioner argues that since George G. Adams testified he would have bought petitioner's stock at any time for book value less 10 percent, this testimony places a minimum fair market value on petitioner's stock. However, Mr. Adams' testimony was that he would not have bought stock at such a price *48 from any other person and would have bought petitioner's stock for such a price merely because of their longstanding friendship and business association. He stated that for these reasons he would have acquired petitioner's stock on the same basis as had been used when the stock of the family of petitioner's brother was acquired by the Adams family in order to give the Adams family control of Mercantile. In our view, the testimony of Mr. Adams does not establish the fair market value of the Mercantile stock for purposes of determining the amount of charitable deduction to which petitioner is entitled. In fact, Mr. Adams specifically testified that he would not have purchased the stock from the First Baptist Church in December 1970 because at that time he was not desirous of acquiring more Mercantile stock. Mr. Adams had not made petitioner an offer for his stock in December 1970 and insofar as this record shows had not made him an offer for the stock other than the offer made in November 1966. Therefore, the cases cited by petitioner dealing with the weight to be given to a bona fide offer for stock at around the valuation date in arriving at fair market value of stock are not *49 applicable to this case. In valuing the 4,000 shares of stock, the fact cannot be overlooked that the 4,000 shares were less than 1 percent of the total outstanding stock of Mercantile and that over 70 percent of the Mercantile stock was owned by the Adams family. Ordinarily a small minority interest in a closely held family corporation will not sell at the same price as a majority interest in that corporation. Also, the fact that the earnings of Mercantile had declined from a high of almost $200,000 in its fiscal year 1967 to approximately $150,000 in its fiscal year 1968, and $94,000 in its fiscal year 1969, recouping only slightly in 1970, cannot be overlooked. However, by December 18, 1970, any knowledgeable person would have been aware that the earnings for Mercantile's fiscal year 1971 were increasing. Also, one of the reasons for the decline in earnings was the loss of some of the White Auto Stores as customers and Mercantile was in the process of making adjustments to overcome this loss. While comparative companies are not as useful here as in some cases because most of the comparatives are substantially larger operations than Mercantile and many of them have different *50 financial setups, as well as different business diversifications, some consideration needs to be given to the fact that Mercantile could not expect its stock to sell at price-earnings ratios as greatly divergent from those of other companies as petitioner's expert witness determined. The three companies with respect to which we have statistics which are in any way close in size to Mercantile are Security Finance Company of Spartensberg, Equitable Credit and Discount Company, and Owens Discount Company. Of these companies the stock of one sold a little in excess of its book value, the stock of another slightly below its book value, and the stock of a third substantially below its book value. While there is not sufficient showing of comparability of these companies to Mercantile for any firm conclusion to be drawn from these facts alone, the indication is that petitioner's contention that in a business of the type carried on by Mercantile net asset or book value and fair market value of stock are synonymous is without merit. In our view, all the facts of record must be considered. These facts include (1) the various sales that were actually made even though it is not clear that *51 any of these sales were truly arm's length, (2) the net asset value of Mercantile, (3) the earnings per share of Mercantile, (4) the fact that after a decline in its earnings Mercantile's potential appeared to be for increased future earnings, (5) the fact that the company was closely held and was controlled by one family, and (6) the statistical data with respect to companies in a business similar to Mercantile's even though those corporations are not strictly comparable to Mercantile. Having weighed all the evidence of record, including the testimony of both expert witnesses, we have concluded that as of December 18, 1970, the value of the 4,000 shares of Mercantile stock given by petitioner to the First Baptist Church of Wichita Falls was $3.75 per share, or a total of $15,000. In coming to our conclusion, we have given consideration to the letter written by petitioner to the pastor of the First Baptist Church, but not as respondent would have us do by considering it to place any restriction on the sale of this stock. In our view, the gift was unrestricted even though petitioner did express concern that if the 4,000 shares were sold immediately their sale might affect the *52 overall price of the stock of Mercantile. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.↩